UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KEITH COOPER,

          Plaintiff,

                                         CASE NO. 05-70029
v.                                      HONORABLE PAUL D. BORMAN

HARTFORD INSURANCE COMPANY,

          Defendant.
_____/

### ORDER DENYING PLAINTIFF'S MOTION TO REMAND

**BACKGROUND:**

       Hartford Insurance Company ("Defendant") insures Estelle Lyons under Policy Number

55 PHH 283017.  The policy provides no-fault coverage to Estelle Lyons.  On December 11,

2003, Chey Lyons, Estelle Lyons' son, drove the insured vehicle and allegedly struck Keith

Cooper while he was on a bicycle crossing the street.  (Complaint ¶7).  Under the provisions of

Michigan No-Fault law, protection insurance policy  ("PIP") benefits would be afforded to

Plaintiff to the extent he can show he was injured.

       Plaintiff asserts a breach of contract claim against Defendant.  Plaintiff alleges *inter alia*:

       4.  That for valuable consideration paid to Defendant's agent, the Defendant insurer
       issued a policy of insurance to its insured, Estelle Lyons regarding her insured vehicle.

       5.  Included in the policy of insurance issued to Ms. Lyons was the right for Plaintiff to
       obtain no fault benefits if and when Ms. Lyons' motor vehicle was involved in a motor
       accident.

       6.  That pursuant to Michigan's No-Fault Statute and Plaintiff being involved in an auto
       accident during the time of the accident in question, Plaintiff is covered for Michigan

1

Auto No-Fault Benefits by the Defendant hereto.

8. That as stated above, Plaintiff filed an application for no-fault benefits with Defendant Insurance Company requesting payment of no fault benefits and that said Defendant prematurely terminated Plaintiff's no-fault benefits....

14. That Defendant has refused during the course of Plaintiff's request for first party claims prior to and subsequent to litigation, to pay any and all of Plaintiff's personal protection insurance benefits in accordance with applicable no fault and contract provisions.

(*Id.* ¶¶4,5,6,8,14).

Plaintiff alleges back pain, injury to his shoulders, and continuing disability. (*Id.* ¶11). Plaintiff also alleges that he was "required to expend or become liable for large sums of money for medical and hospital care and treatment" and that he lost income from work he would have performed had he not been injured. (*Id.* ¶10). Plaintiff alleges that Defendant has refused to pay him first party benefits in accordance with the applicable No-Fault and contract provisions. (*Id.* ¶14).

Defendant removed this action on January 6, 2005. Plaintiff filed his motion to dismiss remand petition on January 18, 2005. Defendant responded on January 31, 2005. Plaintiff replied on March 7, 2005. On April 6, 2005, this Court granted Defendant's Motion for leave to file its Sur-Reply on the grounds that Plaintiff alleged that the amount in controversy was less than $75,000 for the first time in his Reply. The Court heard oral argument on April 20, 2005.

## **ARGUMENTS**

### 1.      **Plaintiff's Argument**

Plaintiff claims that there is no diversity jurisdiction because this is a direct action under 28 U.S.C. §1332(c)(1) against the Defendant based upon a Michigan no-fault insurance policy, which is equated with liability insurance. (Plaintiff's Motion, pg. 5). Plaintiff also argues in his

Reply that the amount in controversy is less than the required $75,000 under 28 U.S.C. §1332

(a). (Plaintiff's Reply, pg. 2).[1]

      **2.     Defendant's Argument**

      Defendant contends that courts have found that an action by an insured against either his

own insurer or in this case an insurer of first party no-fault benefits is not a direct action under

28 U.S.C. §1332(c)(1).  (Defendant's Response, pg. 3).  Therefore, Defendant argues that

diversity jurisdiction exists.  Defendant also argues in its Sur-Reply, that based upon Plaintiff's

Complaint and other documents, the amount in controversy exceeds $75,000.[2]

**<u>ANALYSIS</u>**

      **1.     28 U.S.C. §1332(c)(1)**

      Defendant removed this action pursuant to 28 U.S.C. §1441(a), which provides, in

pertinent part:

> any civil action brought in a State Court of which the district courts of the United States
> have original jurisdiction, may be removed by the defendant or defendants, to the district
> court of the United States for the district and division embracing the place where such
> action is pending.

28 U.S.C. §1441(a)

      Pursuant to 28 U.S.C. §§1331 and 1332, a district court has original jurisdiction if a

---

[1]Plaintiff's counsel indicated at oral argument that he is withdrawing the argument that the amount in controversy is less than the required $75,000 under 28 U.S.C. §1332 (a).  Thus, this issue will not be substantively addressed in the Court's Order.  It should still be noted that the Court finds that Defendant has shown by preponderance of the evidence that the $75,000 amount in controversy requirement under 28 U.S.C. §1332 (a) has been met.

[2]The Court granted Defendant's Motion for leave to file its Sur-Reply on the grounds that Plaintiff alleged that the amount in controversy was less than $75,000 for the first time in his Reply.  However, as stated above, Plaintiff has since withdrawn this argument.

federal question or diversity jurisdiction exists.  In this matter, the Court finds that diversity of

citizenship exists.  Plaintiff, an individual, is a citizen of Michigan, and Defendant, a foreign

corporation, is a citizen of Indiana.

At issue in the instant case is the interpretation of 28 U.S.C. §1332(c)(1), which provides

in relevant part:

> that in any direct action against the insurer of a policy or contract of liability insurance,
> whether incorporated or unincorporated, to which action the insured is not joined as a
> party-defendant, such insurer shall be deemed a citizen of the State of which the insured
> is a citizen, as well as of any State by which the insurer has been incorporated and of the
> State where it has its principal place of business.

(28 U.S.C. §1332(c)(1)).

This portion of 28 U.S.C. §1332(c)(1) was enacted in 1964 as an amendment in direct

response to a situation that had arisen in the Louisiana federal courts.  Louisiana has a direct-

action statute permitting an injured party to bring a tort action directly against an insurer without

joining the alleged torfeasor.  Consequently, Louisiana federal courts became inundated with

third party tort actions against out-of-state insurers that would have otherwise been adjudicated

in local state courts.  See Wright, Miller & Cooper Federal Practice & Procedures §3629 Direct

Liability Against Liability Insurers.  The 1964 amendment to Section 1332 was enacted to

correct this situation.

Plaintiff claims that there is no diversity jurisdiction because this is a direct action against

the Defendant based upon a Michigan no-fault insurance policy, which is equated with liability

insurance.  (Plaintiff's Motion, pg. 5).  Defendant contends that courts have found that an action

by an insured against either his own insurer or in this case an insurer of first party no-fault

benefits is not a direct action under 28 U.S.C. §1332(c)(1).

4

The Plaintiff cites *Ford Motor Co. v. Insurance Co. of North America,* 669 F.2d 421 (6th

Cir. 1982) in support of his argument.  In *Ford,* a refinery truck driver had just finished

unloading his tank at a Ford Motor Company casting plant.  Approximately one half hour later,

an explosion occurred at the loading area allegedly due to a Ford employee's negligence in

directing the truck operator to connect the tank truck pump to the wrong tank.  Ford Motor

Company, the insured, brought its claim for property protection benefits under Michigan's No-

Fault Statute (MCL §500.3121) against its insurer, rather than the alleged tortfeasor, to recover

proceeds from the explosion.  The Sixth Circuit held that a federal court has no jurisdiction

based on §1332(c)(1) where a party claims damages arising out of the use of a motor vehicle,

and sues the insurer of the vehicle under Michigan's No-Fault statute.  Sixth Circuit provided:

> The language of the amendment [§1332(c)(1)] is inclusive rather than exclusive ... As has
> been noted earlier, MCLA §500.3135(2) abolished tort liability arising from the
> ownership, maintenance or use of a motor vehicle in Michigan.  As a substitute for such
> tort liability Michigan provided 'personal protection benefits' and 'property protection
> benefits' for those injured or suffering property damage arising out of the ownership,
> maintenance or use of such vehicles.  These benefits are provided on a no-fault basis
> rather than on the basis of traditional tort liability, and actions to secure the benefits may
> be maintained directly against the insurer of the vehicle rather than the insured.  The
> literal requirements for application of the proviso are met.

(*Id.* at 425).

The instant case is distinguishable from *Ford.*  In the instant matter, the Plaintiff alleges

he is covered under the insurance policy and brings a breach of contract action against

Defendant.  In *Ford,* the defendant insurer stood in the shoes of the insured.  The *Ford* Court

provided that the terms of §1332(c)(1) were met because in a property protection benefit suit, the

action was to secure benefits which could be brought directly against the insurer of the vehicle

rather than the insured.  The Court finds that the key distinction is that Plaintiff brings a claim

for breach of contract based upon the insurer's failure to pay benefits.  The Plaintiff in this case

is not asserting a tort action against the insurer based upon the negligence of Chey Lyons, the

driver of the car which struck him.  If Plaintiff brought such an action, §1332(c)(1) would apply.

However, Plaintiff brings a first party action against Defendant based upon breach of contract.

Given that Plaintiff alleges that he is, in essence, the insured and is suing his insurer based upon

its failure to pay benefits under the No-Fault Insurance Policy, the Court finds that §1332(c)(1)

does not apply to the instant matter.

      The Court notes that the *Ford* case has been criticized.  As one Court has stated:

> [w]hile at first blush, this action ... arguably fits within the purview of the Sixth Circuit's
> unusually expansive reading of section 1332(c)(1)'s insurance provision in *Greene* and
> *Ford,* a closer reading of those opinions suggests that their language swept more broadly
> than their underlying reasoning can support.  *Ford* was ultimately an easy case.  An
> employer sued its no fault insurer directly for property damage rather than suing the
> actual tortfeasor.  In such a case, no-fault insurance, while contractual in nature, acts as a
> substitute for tort liability, and the no-fault insurer - - a phenomenon that did not exist
> when section 1332(c)(1) was enacted - - stands in place of the tortfeasor in a manner to
> that originally envisioned by Congress in addressing the direct action problem.

*Redmon v. Sumitomo Marine Management, Inc.* 179 F.Supp. 2d 787, 791 (N.D. Ohio 2001).

      The Court acknowledges that *Hundley v. Farmers Insurance Group,* 1991 U.S. Dist.

LEXIS 3259 (W.D. Mich. March 18, 1991) (unpublished) applied the *Ford* case to similar facts

to the instant case.  In *Hundley,* the plaintiff-insured alleged that the defendant-insurer

improperly discontinued his no-fault benefits due to him based upon a automobile accident.  The

Court held:

> [t]his is a direct action against the insurer, and the insured is not joined as a party
> defendant.  The action is on a Michigan no-fault insurance policy which is equated with
> liability insurance.  Since plaintiff is the insured and the citizenship of the insured under
> a no-fault policy may be attributed to the defendant insurer, there is no diversity of
> citizenship.  Therefore, the Court lacks subject matter jurisdiction.

(*Id.* at *5).

The Court notes that *Hundley* is an unpublished case and does not have precedential

authority upon this Court.  Further, the Court finds that *Hundley* is not consistent with the

language and rationale of §1332(c)(1).  Section 1332(c)(1) was enacted to eliminate a plaintiff's

ability to create diversity jurisdiction by substituting a tortfeasor's insurer for the tortfeasor.  As

one Court stated:

> Courts which have construed §1332(c) have uniformly held that Congress intended the
> word 'direct' to limit the word 'action' so that its impact is narrowed to those situations
> in which an injured party is permitted to sue, directly and without joinder of the
> tortfeasor, the tortfeasor's liability insurer without first obtaining a judgment against the
> tortfeasor himself.  It was not intended to encompass 'any action' against an insurer ...
> Unless the suit against the insurance company is of such a nature that liability sought to
> be imposed could be imposed against the insured, this action is not a 'direct action' in the
> sense used in the proviso of §1332(c).

Wright, Miller & Cooper Federal Practice & Procedures §3629 Direct Liability Against Liability

Insurers fn. 10 (quoting *Lank v. Federal Ins. Co.,* 309 F.Supp. 349, 351 (D.C. Del. 1970)).  In the

instant case, Plaintiff's breach of contract claim against the Defendant insurance company is not

of such a nature where liability could be imposed against the insured.  Plaintiff alleges he *is* the

insured.  Plaintiff's Complaint provides "[t]hat pursuant to Michigan's No-Fault Statute and

Plaintiff being involved in an auto accident during the time of the accident in question, Plaintiff

is covered for Michigan Auto No-Fault Benefits by the Defendant hereto."  (Complaint ¶6).

Therefore, this suit is not the "direct action" envisioned by §1332(c)(1).

The Court follows the reasoning set forth in *Spooner v. Paul Revere Life Insurance Co.,*

578 F.Supp. 369 (E.D. Mich. 1984).  In *Spooner v. Paul Revere Life Insurance Co.,* 578 F.Supp.

369 (E.D. Mich. 1984, the plaintiff insured, sued its disability insurer for failure to pay benefits

under the policy.  The Court found that section 1332(c)(1) was not applicable to that direct

action against the insurer, because the policy of insurance created liability directly to the insured

from the insurer, and not through the liability of another person.  The Court provided:

> the application of the proviso to an insurance company in the typical tort action is proper
> because the tortfeasor has purchased the policy as protection against arising from his
> breach of a duty owed to the injured party.  The typical action is such that the act for
> which liability could be imposed against the insured.  In this sense, the insurance
> company derives its liability from the insured ... In contrast, in actions such as the case at
> hand, the injured party could not seek to impose liability on the insurance company and
> the employer for the same act.

(*Id.* at 373).

Similarly here, Plaintiff is not asserting a typical tort action against Defendant, rather he

is asserting a claim for failure to pay benefits.

*Reed v. Chesney,* 709 F.Supp. 792 (E.D. Mich. 1989) is instructive.  In *Reed,* the plaintiff

was injured in an automobile accident.  She filed a negligence suit against the other drivers in the

accident, and also brought a No-Fault Insurance contract claim against her insurer based upon its

withholding of benefits.  The Court found that §1332(c)(1) did not destroy diversity jurisdiction

because the insured was the plaintiff not the tortfeasor.  The Court quoted *Ford Motor Co. v. Ins.

Co. of North America, infra,* and provided that §1332(c)(1) was enacted by Congress to

eliminate "back door diversity' i.e. the practice of substituting a tortfeasor's insurer for the

tortfeasor as a named defendant to create jurisdiction."  *Id.* at 794.  The Court held that the

policy underlying §1332(c)(1) will not be served under these facts.  Similarly, in the instant case,

the Court finds that the policy underlying §1332(c)(1) will not be served because Plaintiff brings

a breach of contract claim, and has not substituted Defendant for the alleged tortfeasor.

In *Lee-Lipstreu v. Chubb Group of Insurance Companies,* 329 F.3d 898 (6th Cir. 2003),

the Sixth Circuit addressed whether a so-called *Scott-Pontzer* claim is a direct action under

§1332(c)(1).  A *Scott-Pontzer* claim is based on the Ohio Supreme Court case *Scott-Pontzer v. Liberty Mut. Fire & Ins. Co.,* 85 St.3d 660 (1999) which allowed employees sue their employer's insurance carrier to recover underinsured motorist benefits.  The Sixth Circuit found that, under a *Scott-Pontzer* claim, the employee is the insured under the policy, therefore, the plaintiff was suing his own insurance carrier.  In such instances, the Court held that "applying the direct action provision ... would result in an absurdity - federal courts would never hear common insurance disputes because the insured and the insurer, the plaintiff and defendant, would always be considered citizens of the same state."  (*Id.* at 900).  The Court found that such claims were not direct actions under §1332(c)(1) and jurisdiction with the federal courts was proper.   The Court notes that the Sixth Circuit found it "unnecessary to elaborate further on the meaning of 'direct action' because regardless of the precise definition, the term cannot possibly include *Scott-Pontzer* claims."  (*Id.* at 900).  The Court finds that in the instant case, Plaintiff's claim based on Michigan's No-Fault Insurance scheme is analogous to the *Scott-Pontzer* claim addressed in *Lee-Lipstreu* because in both instances, the plaintiffs can be characterized as the insured.

The Court also finds *McGlinchey v. Hartford Accident and Indemnity Co.,* 866 F.2d 651 (3d. Cir. 1989) instructive.  In *McGlinchey*, the plaintiff was injured in an accident while driving a rental car.  The other car involved in the accident was not insured by the owner or driver.  The plaintiff brought suit against his and his rental car agency's insurance carriers.  The plaintiff's insurance carrier removed the action to federal court.  The plaintiff argued that there was no diversity jurisdiction based on §1332(c)(1) because it was a direct action against the insurer of a policy or contract of liability insurance which made Hartford a citizen of the same state in which

9

plaintiff resides.  The Third Circuit held that it was not a direct action within the meaning of §1332(c)(1).  The Court stated "[i]t has been said that a 'direct action,' as that term is used in §1332(c), does not exist 'unless the cause of action against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured."  (*Id.* at 653).  The Court went on quote an Eleventh Circuit case as follows: "when an insured, as the injured party, brings suit against his insurer, no direct action could be found because the insurer's status is not that of a 'payor of a judgment based on the negligence of one of its insured."  (*Id.* quoting *Myers v. State Farm Insurance Co.,* 842 F.3d at 705, 707 (3d. Cir. 1988)).

The Court finds instantly that Defendant's status is not that of a "payor of a judgment based on the negligence of one of its insured."  Because Plaintiff asserts a first party breach of contract claim against Defendant, the Court finds that §1332(c)(1) is not applicable.  The Court finds that this is not a situation where Plaintiff is suing Defendant rather than the alleged tortfeasor to create diversity jurisdiction in this Court.  Plaintiff's cause of action, as alleged in his Complaint, seeks to recover benefits from Defendant based upon its alleged breach of contract.  Section 1332(c)(1) did not contemplate an insurance scheme such as Michigan's No-Fault insurance scheme.

The Court  recognizes that since *Ford, supra,* the Sixth Circuit has not addressed 28 U.S.C. §1332(c)(1) as applied to Michigan's No-Fault insurance scheme.  If the parties so stipulate, the Court is willing to certify this issue for interlocutory appeal pursuant to 28 U.S.C. §1292(b).  Section 1292(b)  provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the litigation the ultimate determination of

the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

(28 U.S.C. §1292(b)).

In conclusion, the Court finds that it has diversity jurisdiction, and denies Plaintiff's

Motion to Dismiss/Remand.

**SO ORDERED.**


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  May 4, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on May 4, 2005.


s/Jonie Parker
Case Manager

11